Cougot<br>v.<br>New Orleans.

exercise of a legal right on the part of the city, and affords no cause of action to the farmers or lessees of the revenues of markets previously established, for the recovery of damages occasioned thereby. If the exercise of a legitimate power by a municipal corporation, cause damage to an individual, it is *damnum absque injuria*, and no action lies in his favor for indemnity. *Acrot* v., *City*, Opinion Book No. 30, p. 185.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be affirmed, with costs.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### C. BUTLITT *v.* R. A. STEWART.—C. JONES and WIFE, Intervenors.—M. WHITE & Co., Warrantors.

A party to a suit cannot be received as a witness if he is liable for costs; he cannot in such case be considered as testifying against his interest.

The judicial admission, in order to be divided against the party pleading the same, must be one in the nature of a confession and avoidance of the plaintiff's demand, or some portion, as in the plea of compensation, otherwise the admission cannot be divided.

APPEAL from the District Court of the Parish of St. Bernard, *Foulhouze, J.* *Geo. S. Lacey,* for plaintiffs and intervenors, appellants. *Hyams, Labat & Jonas,* for warrantors. *R. McK. Spearing,* for defendant.

MERRICK, C. J. A case between the above mentioned parties, arising upon the same transaction, was before this court in 1856, and then dismissed as in case of nonsuit. In the present suit, *Charles Jones* and his wife, *Laura Stewart,* have intervened, claiming the interest represented by plaintiff. *Maunsel White* and *Theodore Rion* have been called in warranty, and the defendant has instituted a reconventional demand against the intervenors. Judgment was rendered against the plaintiff and intervenors, and they appeal. They unite in their demands and are represented by the same counsel in this court.

On the trial of the case, the deposition of the plaintiff was offered in evidence by the intervenors, but rejected by the District Judge. The defendant also offered the depositions of *Maunsel White* and *Rion,* which also met the same fate. These depositions were properly disregarded. The testimony of the witnesses tended to defeat the demands respectively formed against them. Liable as they might be for costs, they could not be considered as testifying against their interest.

The facts of the case may be briefly stated as follows :

In 1850, *John Caldwell Jr.* and *Daniel Hickey,* being the joint owners of a plantation named Laurels, near the city of Baton Rouge, in the parish of East Baton Rouge. and thirty-two slaves, sold the same by separate acts to *Mrs. Laura Jones,* the intervenor, for the aggregate sum, as specified in the acts, of $42,500.

*Jones* and wife lived upon the plantation.

The firm of *Maunsel White & Co.,* it would seem, advanced the price, if in fact the title was not taken in the name of *Mrs. Jones* for their benefit. The firm of *Maunsel White & Co.* was at that time composed of *Cuthbert Bullitt,* the plaintiff, and *White* and *Rion,* the warrantors. *White* was either the principal partner, or a creditor of the firm to a large amount, say $700,000. In 1851, the firm bought the negroes in controversy, viz : *Lewis, Phillip, Emile* and *Amanda,* and sent them up to the Laurels

Plantation, where they remained as part of the force for over a year before the act of sale from *Jones* and wife to *Stewart*, the foundation of the present suit, was passed. In 1852, the firm of *Maunsel White & Co.* suspended payment for a time. They were indebted to *Matthew Ramsey*, the father-in-law of *Stewart*, the defendant, in the sum of $36,000. The indebtedness of *Mrs. Jones* to *Maunsel White & Co.*, including the price of plantation and negroes subsequently bought, was about $52,000. It was proposed to arrange the indebtedness of *Ramsey* by a transfer to him of the plantation and slaves. *Stewart* acted as *Ramsey's* agent, and previous to the sale visited the plantation with *Col. Nolan Stewart*, to ascertain its value and condition. *Jones* and wife, who were met by them on the way, informed them that there were about forty-four negroes on the place belonging to it, and that the overseer could show the property. The negroes placed there by *Maunsel White & Co.*, now in controversy, were shown by the overseer as belonging to the same. Some other negroes which *Jones* had brought from Black River were excluded. The defendant and *Col. Nolan Stewart* formed an estimate of the value of the property, including *Lewis, Phillip* and *Emile*, at $62,500. *Amanda* was absent and not shown to them at that time, although they were informed she belonged to the place.

On the 19th of February, 1852, *Jones* and wife and *Stewart*, the defendant, appeared before *H. B. Cenas*, notary public of this city, and in consideration of $65,000 paid and assumed by *Ramsey*, transferred to *the defendant* the plantation and certain slaves therein named and described as attached to and employed on said plantation. The description of the property was followed by this declaration in the act, viz :

"The said property and slaves were acquired by the present vendor as follows : the undivided three-fourths thereof by purchase from *John Caldwell Jr.*, by an act passed before *Albert C. Ainsworth*, then notary public in this city, on the 20th day of March, 1850, and the remaining undivided fourth part by purchase from *Daniel Hickey* by act passed before *Thos. J. Beck*, then also a notary public in and for the city and parish of New Orleans, on the 29th day of June, 1850."

After many other clauses in reference to the price and excluding warranty, and declaring that the title was but a quit claim deed, the act concluded with the following clause :

"And as there has been a death among the slaves on the said plantation since it was purchased by the said vendor, and as there may possibly be errors as to the same in the names thereof, as well as in the number, it is well understood that the purchaser will make no claim for compensation in case the number of said slaves should fall short, it being the intention of said vendor to sell all which are now living and as purchased by her, with the exception of *Zack, Yellow John, Eliza,* her five children, and *Richard.*"

*Zack* and *Yellow John* appear to have been acquired with the plantation from *Caldwell & Hickey ;* the other seven excepted negroes were, it seems, brought from Black River.

*Stewart* took possession of the plantation and negroes employed thereon, including those in controversy. *Jones* and wife having disturbed him in possession of these last, he applied to the plaintiff, and represented

to the latter that *Lewis*, *Phillip*, *Emile* and *Amanda* were intended to be included in the sale.

The plaintiff examined the books of *Maunsel White & Co.*, and having found that the value of these slaves swelled the amount which was exacted of *Ramsey*, and that the title was, as he supposed, in himself, he thereupon executed in favor of *Stewart* an act of sale under private signature for the negroes in controversy, for the nominal price of seventeen hundred dollars, being of the opinion that it was the intention of the defendant to purchase all except the negroes specially excluded by the act. *Stewart* shortly afterwards made title to his principal, *Ramsey*.

This suit is brought to rescind the sale by act under private signature from *Bullitt* to *Stewart*, on the ground of fraudulent misrepresentation on the part of the latter at the time he obtained the act, and error. *Bullitt*, in his answer to the intervention, admits that the title to the four slaves is in *Mrs. Jones*, but alleges that he has an interest in rescinding the sale.

*Maunsel White* for himself, and as liquidator of *Maunsel White & Co.*, excepted to the call in warranty because *Matthew Ramsey* who was the principal of the agent *Stewart*, was not cited; because *Bullitt* cannot stand in judgment, having no interest; and if the foregoing exceptions should be overruled, then they defend the title acquired by *Ramsey* from *Bullitt.*

The appellants in this court rely, in order to establish the fraud, principally upon the testimony of *J. K. Elgee, Esq.*, and *William Christy* the notary who prepared the act of sale from *Mrs. Jones* to *Stewart*, connected with a judicial admission in defendant's answer.

We remark, in regard to *Mr. Elgee's* testimony, taken as a whole, that it is quite as favorable to the defendant as to the plaintiff and intervenors, and makes nothing in their favor.

The plaintiff's and intervenors' attempt to show title in *Mrs. Jones* through a supposed judicial admission in defendant's answer, is equally unavailing. It is true that defendant says that said *Ramsey* was the creditor of *Maunsel White & Co.* for upwards of $37,000, and that *Mrs. Jones* owed them $70,000 on account of the price of the plantation and supplies, and "which said account included the price paid by said house of *Maunsel White & Co.*, for the identical four slaves in controversy, to wit, *Lewis*, *Phillip*, *Emile* and *Amanda*, and also the other slave, viz, a man named *Robert*, wrongfully taken away from said plantation by said *Mrs. Jones*, &c."

But this allegation must be taken with the other allegations of the answer on the same subject, to wit, that the legal title to said slaves had been taken by *Cuthbert Bullitt* in his own name, and that he had never parted with said legal title, or vested the same in said *Laura Jones*, and in substance, that said slaves were transferred by *Bullitt* and received by defendant in good faith in pursuance of the understanding of the parties.

It is true, that a judicial admission may sometimes be divided against the party pleading the same. But the admission which may be so divided is one in the nature of a confession and avoidance of the plaintiff's demand, or some portion of the same, as a plea in compensation, payment, or the avoidance of a contract by duress, fraud, error, and the like, where the defence pleaded necessarily admits the allegations of the petition, but avoids their effect by showing some other matter in bar of the same. Here the defendant does not admit a legal title in *Mrs. Jones*, but on the

contrary, avers that the same was in *Bullitt*. The intervenors and plain-
tiff cannot, therefore, divide this portion of the answer and urge that
because the price of these slaves was carried into the account, therefore,
the *title vested* in *Mrs. Jones*, although she paid no part of the price of
the same.

The testimony of *Christy* relates principally to what transpired and
what was said and done by the parties at the time the notarial act was
passed before *Cenas*, in which *Mrs. Jones* transferred the property to
*Stewart*. It is somewhat inconsistent with the last clause which he dic-
tated in the notarial act. On the trial of the first case before this court,
we said we did not think the fraud was legally proven by the testimony
of *Christy*: that fraud should be clearly established. We see nothing in
his testimony, as exhibited on the last trial, which makes the case strong-
er than the first, and we concur with the District Judge in opinion, that
the plaintiff and intervenors have failed to make out a case for relief on
the merits.

This view makes it useless to consider whether *Ramsey* should have
been made a party, or whether *Bullitt* had sufficient interest to maintain
the action.

Defendant has prayed for an amendment of the judgment in his favor.

The testimony of *Rion* is rejected, and therefore the defendant has
failed in his claim for the negro *Robert*, removed by intervenor.

The only damages which the law gives to the defendant for the wrong-
ful bringing of this suit, are his costs. See *Hale* v. *City of New Orleans*,
13 An. 502.

Judgment affirmed.